First case is Bejgum v. Department of Financial & Professional Regulation, case number 5-230495. Is that right? Okay. Do you think I made a mistake? No. No. All right. Are both counsels ready to proceed? All right. Mr. Dunham, you may proceed first, then. Thank you. Good morning. My name is Darrell Dunham. I'm representing Dr. Pavan Bejgum. The facts are extensive, but I think they can be kind of summarized very briefly. The allegation that the department is making with regard to my client is that essentially on June 15, 2018, I'll try and speak a little louder. On June 15, 2018, the department alleges that my client, Dr. Bejgum, as a medical doctor, engaged in conduct which was very unprofessional. And if indeed that he did engage in that conduct, a very severe sanction should have been and would be meted out for his conduct. He denied those allegations, and a complaint was filed by the department against him. He had an administrative hearing in front of an administrative law judge. He testified at length as to his relationship with the patient and specifically the events that occurred on January 15, 2018, and denied all of the allegations. The patient testified at great length and restated the allegations and affirmed the allegations that the department was making in its complaint. And an administrative law judge subsequently, in a fairly lengthy opinion, concluded in about two and a half pages of the opinion that the patient was credible and Dr. Bejgum was not credible. Dr. Bejgum retained new counsel and urged the board, the department's board, and eventually the director, not to adopt the recommendations of the ALJ on various grounds. But the one that's most important here is that in their motion for new hearing, attached statements of witnesses, nurses on Dr. Bejgum's staff, who alleged that these events could not have occurred. The patient alleged that not only on June 15, 2018, but in prior visits, she was unchaperoned, whereas the nurse's statement indicates that it was Dr. Bejgum's policy to never see a female patient on an unchaperoned basis. And these nurses not only testified that he did not vary from that policy, but specifically, one of the nurses claimed to have been there on June 15, 2018, and said he just could not have happened. So are you asking that the ALJ should have allowed the reopening of the proofs, or the board should have allowed reopening of the proofs? Correct, Your Honor. It would not have been before the ALJ. It would have been before the board. And this issue was raised before the board, and I suspect we're going to be spending some time talking about forfeiture as to whether our argument in this court has been forfeited. Of course, we don't think it has been. You also point out in your brief, I think, that you allege the circuit court or the board applied the wrong law. Is that right? It's just manifestly obvious that the circuit court and the board applied the wrong law. And here's why. The statutes that – and I set out the statutes, page 19, in my brief. But basically, they say that you are prohibited from relying on, quote, newly discovered evidence before – you cannot rely on newly discovered evidence after the proceedings have been terminated. And in this case, when the issue was raised before the department, the proceedings had not been terminated. The procedure is, is that the ALJ makes a recommendation to the board. The board reviews the L.A. administrative law judge's recommendation and then, in this case, approved the recommendation and then makes a further recommendation to the director who issues the final order. And at that point, only at that point, does Dr. Betchkin have a final order from which he can take an appeal. And so the statutes that were relied on by the circuit court and the board and even the department in its briefs now just absolutely on their face do not apply. And so what they did, the board did, and in the circuit court what the department did, is that they relied on a substantial body of law, starting with – citing the Edwards case, a criminal case. But basically, in the Edwards case, it rose up on post-conviction relief. And in that case, the defendant, the incarcerating individual, after conviction, after judgment of sentence had been entered, say, well, there's newly discovered evidence. And there's a body of law about newly discovered evidence and said you cannot rely on newly discovered evidence, especially when that evidence was available to the defendant, to the party moving to set aside the judgment, either it was available or could have been discovered with reasonable diligence. But what we assert, and we think it's just manifestly obvious, is that a final judgment had not been entered. And so there is a body of law in the state of Illinois that governs a situation where we are asking to re-open proofs. And that's essentially what we're asking for in this court, to re-open proofs. Mr. Dunham, are we allowed to order that kind of relief? I think you can issue an opinion, Your Honor, instructing the circuit court and eventually the department as to what the law is, and remand to the circuit court and eventually the department to proceed in a manner that's consistent with your opinion. I'm just curious as to how we would issue such an order based on the standard of review. Well, the standard of review in this case, we think, is denotable. I know, but when we review the award of an administrative agency by the circuit court, what is the bounds of our authority? Well, Your Honor, there are certain cases that say the circuit court abuses its discretion where it plainly and obviously and manifestly misapplied the law. In this case, the circuit court did just that. If you look at page – in the appendix, page A91, you'll see that the circuit court doesn't cite the statute but cites the very verbiage of the statute, which can only be applied after the proceedings have been terminated, can only be applied after a final judgment has been entered. And that's not this case. This issue was raised before the final judgment was entered. The wrong standard was applied. So whether you say it's by denotable review, which we think is the appropriate standard of review, or abuse of discretion because the circuit court does not have the discretion to apply the wrong law, and that's exactly what was done. All you have to do is look at the statute. Just read the statute. There's two statutes that are in place here, page – page 91 of the brief. And if I could – if I could turn – if I could turn page 19 of my brief, or if I said 91, I'm mistaken. So if you look at page 19 of the brief, you'll see that the first statute, 735 ILS 5 forward slash 13310, and it says, the third full sentence, it says, no new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the ministry shall be heard by the court. It says – this is after final administrative decision. See the first sentence. Every action to review any final administrative decision. So they're talking about in situations like that where after the agency has entered its final order, the agreed party comes in and says, I've got newly discovered evidence. And that's when this statute applies. Then you look at 735 ILCS 5 forward slash 311, and at the beginning – at the end of the sentence, it says, subsequent – the fifth line from the bottom, subsequent to the termination of the proceedings. So both statutes apply in cases where if Dr. Bedgham, after the director had issued his final judgment, or in this case, her final judgment, said, well, wait a minute. I've got this testimony of these two nurses I want you to consider. Then the two statutes would apply. How do you classify that as newly discovered evidence, though, when he was aware of their testimony ahead of time? My understanding is one of the nurses was reluctant to testify. She could have been subpoenaed. He was aware of her testimony. He was certainly aware of what the office's policies were. I think one of the witnesses is purported to be willing to testify. The office policy was we didn't allow one-on-one. We always got a chaperone in the room if truly Dr. Bedgham knew that policy. So how is that newly discovered evidence? If I may say, that's a very, very good question. That's one of the questions that – you know, a very important question to subpoena. And I have been representing Dr. Bedgham from the appeal, and I'm representing him in other matters, and so I decided to take over the appeal. I looked at this – looked at the record, and I concluded that if the department's line of cases were to be adopted by this court and circuit court, I don't think it just can't be met, that it's not newly discovered evidence under that standard. But the standard is whether or not proofs should be reopened. And it's a completely different standard in those cases. Illinois law says where you are trying to reopen proofs – and I should say that there's a dispute between the department and Dr. Bedgham about what is the analogous law. You can't – you look at the regulations, the statutes governing how the department is to conduct such hearings, and they don't have their own body of evidence. They don't have – it's very sparse. And so as we argue that what happens is, is that a court – circuit court's reviewing and what the department itself should be doing is looking to how the Civil Practice Act and its rules of evidence and the like as to how it should proceed. But here's what this standard is for reopening proofs. Number one, did the movement have a reasonable excuse for not bringing forward the evidence prior – at the time of the original hearing? Number two, does the new evidence surprise or cause unfair prejudice to the opposing party? How – the issue of whether or not what happened on June 15, 2018, was critical. And as we argue, you know, the department is supposed to do an investigation before they even file these charges, and it's obvious that nobody in the department talked to the nurses. But we're not talking about an adversary situation here. It might be a little bit different if the patient was suing Dr. Bedgham directly. But here we've got a department supposed to be trying to find out the truth. If it turns out the charges are right, then Dr. Bedgham should not be practicing medicine. However, if the charges are false, then the people in Metropolis, Illinois, are being deprived of the services as an underrepresented area of a very well-qualified position. We need to be getting to the truth. And I see that my amber light is going on here, and so I don't want to waste my time. But if you look at all of the standards, surprise or unfair prejudice, there is no unfair prejudice to the department if they're really looking for the truth. Is it of the utmost importance to my client? Obviously it is. And then another case has added no cogent reason to deny the request. What is the cogent reason? Why is it that you'd want to deny Dr. Bedgham's request to reopen proofs and hear this evidence? Well, the only thing they've decided is, well, it will be inconvenient. It might be inconvenient to the department if an order was entered directing them to do so. Well, that's the same standard that would be applied in any trial case where you're wanting to open proofs. It's obviously inconvenient, but that's not a cogent reason. And so they just applied the wrong standard of law. It's not a surprise to anybody. I mean, let's try and find out what the truth is. Let's hear the evidence of these nurses. And I think it's very important testimony that the trial facts should hear. If there aren't further questions, I'll sit down. I think on the four-picture argument, it's obviously it was just plain error. It should have been obvious to the board. It should have been obvious to the circuit court. They applied the wrong statute. And so we should remand them, apply the correct body of law. Questions, Justice Davis? All right, thank you. Would you go to the front? I'll turn it for rebuttal in a moment. Attorney for the appellee, Ms. Wunder. Good morning. Good morning. Laura Wunder on behalf of the department. That doesn't amplify. The plaintiff is contending here that the director abused her discretion by denying his motion for a re-hearing because the decision purportedly applied the wrong legal guidelines. And that's meritless for at least three reasons. And I'd like to state those up front and then talk about them in more detail. First, plaintiff's contentions here are newly raised on appeal. And to a large degree, they contradict what was in the plaintiff's re-hearing motion before the director. And just to clarify, because it came up earlier, the statement that this was before the medical board, to clarify the posture, the hearing was over. The ALJ had issued the recommendation based on the evidence that had gone to the medical board. The medical board reviewed all that and concurred with the ALJ. And then this was now before the director on a re-hearing. But the evidentiary phase was over, and the recommendations were made to the director at that time. So we're talking about the director's decision on the hearing. And the director can't be found to have abused her discretion by not accepting contentions that the plaintiff never put before the director in the first place. And then she resolved the matter. But if the court would excuse that, then we would get into what I think are the second and third points here, which is that the director did not apply inappropriate legal guidelines. And then in any event, if we look to this analogy of reopening proofs, which is what the plaintiff is asserting here rather than allowing a new trial, it all comes down to the same thing here. There's no basis for a re-hearing where the plaintiff had every opportunity to put on defense, did not call potential witnesses who were well-known to him, and did not have a justification that could excuse that failure. Do you agree with the appellant that the standard review is de novo or do you believe it's abuse of discretion? The standard review is abuse of discretion. This is the type of discretionary decision that the agency would make about allowing evidence. So the court is reviewing that decision for an abuse of discretion. I think the plaintiff's contention is, well, there should be an abuse of discretion found here because purportedly this was the wrong standard. And that's not the case for the reasons that I've said and that I'll discuss more, that there was no abuse of discretion in the director's decision. And that's also what I would like to talk about, but I think it should also maybe clarify because we've talked a bit about the circuit court and the circuit court's decision, and did the circuit court apply the wrong law. And I think that the short answer here is the circuit court's decision really doesn't matter here because this is administrative review and the circuit – this court is reviewing the director's decision, not the circuit court's decision. And a slightly longer answer, there's this provision in the administrative review law, section 3111, that talks about when a circuit court can remand. And the department is not relying on that as a basis for upholding the director's decision. The basis for upholding the director's decision is that it wasn't an abuse of discretion. The only way that section 311 comes into this is to confirm that it doesn't apply. Those criteria aren't met. So, in other words, that's not some type of alternative basis for a remand that would allow a remand here. So we can just take section 311 out of the equation. And what we're looking at is, is the director's decision an abuse of discretion? And to get back to that, a main point here is that the decision has to be evaluated by the motion that the plaintiff put before the director. Most of what's being raised, as I've said, not only was not before the director, but it's contradicting the motion that he raised. And that's contrary to the basics of administrative review, where the court is reviewing the director's decision based on what was before the director. Is the fact that the doctor stipulated to a no-contact order or stipulated to the facts of a no-contact order, does that play any part in your analysis or our analysis in this, whether or not the proof should have been removed? That was a factor that the ALJ would take into account in making a decision. But that's not so much involved with the rehearing motion. With the rehearing motion, I think it's helpful to look at some of the contradictions. The plaintiff is now saying that these cases that talk about allowing new trials based on newly discovered evidence, that they aren't pertinent. But those were the cases that the plaintiff cited to the director, and they were relying on them before the director as the basis for rehearing. And then they gave the rationale that the nurses were purportedly reluctant to testify earlier. And that's not a persuasive justification, because the plaintiff could simply have requested a subpoena. The main reason, alien reason, for having a subpoena process is that witnesses might be reluctant to testify. So then when we get to the appeal now, that rationale is abandoned, and the plaintiff is stating, well, they weren't called because the first attorney was negligent. And to be clear, that would not be the case. The law is very clear that even if that were the case, attorney negligence is not considered a basis for rehearing a proceeding. The law is very clear on that. But my point here is that now there's a different rationale than what was before the director. There are other problems in the rehearing motion that I think we should briefly note. The nurses' statements themselves were not affidavits or otherwise sworn statements. And this is a situation where the plaintiff is asking for extraordinary relief here, going back and having another hearing. So then they should have at least provided some competent evidence that would support that. That not doing so, that was contrary to the department's regulations, so that in itself would have been a basis for the denial. And then there were other problems in what was being presented. The motion told the director that the nurses were reluctant because they thought the hospital might retaliate against them, but now they're newly retired. But the nurses' statements don't say anything about that. And they don't provide any explanation for why weren't they called, what was the delay, what else could have been done. None of that is presented. And then, in fact, one of the nurses states that she retired in July of 2018, which was nearly three years before the hearing. So that would seem to contradict, again, what's being said in the motion. So we have only this reluctant witness rationale. I'm not sure I'm following what you say that is contradicted in the motion. I mean, the motion does say that they've heard reprisals or repercussions. And that states that they are newly retired. But then when you look at the statement, one of the nurses gives this retirement date of July 2018, which, as I said, was quite a while before this administrative hearing. So that would not be newly retired. They would seem to have retired years before the hearing. And I can wind up this point. I mean, the idea here is that the reluctant witness rationale that was provided would not have been a persuasive justification. And then, in any event, before the director, that justification wasn't properly supported. So the bottom line here is that the plaintiff can't complain because the director considered exactly the motion and the contentions that they made. The plaintiff argues, well, this formature should be excused, and that's not the case. What about Mr. Dunham's argument that there are certain criteria that were supposed to be used, including the reasonable excuse, the evidence, whether it caused surprise or unfair prejudice, and whether it was of the utmost importance and whether there was no coach of reason to deny the request? How do we address those issues? We can turn to that. Apart from that not being presented before the director and the way the director did analyze it was perfectly reasonable, but even if you looked to these reopening the proofs guidelines that the plaintiff is urging, they wouldn't change anything here. If we call this allowing a new trial or reopening proofs, they're not really any different in this case. Both guidelines give broad discretion to the decision maker. They come down to the same core, looking to whether a client has made a compelling case to present evidence that they failed to present during the hearing, and that didn't happen here. There's not a single case cited where the proofs were reopened in an administrative proceeding or a court proceeding based on anything comparable to what happened here, where the proponent didn't call witnesses that were known to him and where they had every opportunity to present a defense. And we can look at those guidelines more specifically. A main factor was if this is a new trial, if this is reopening proofs, a main factor looks to is there a reason that would warrant excusing the untimeliness, and a lack of diligence in itself can provide a reason for denial. And here, as we've talked about, there was never a persuasive justification. There was the reluctant witness rationale, which was a weak reason, wasn't supported by the plaintiff's submissions in the sense of affidavits. And then on appeal is this idea of, well, perhaps this was attorney negligence. And again, the case law is very clear that that would not be a basis for doing the proceeding. The plaintiff then contends, well, there's no prejudice here, which is another guideline in reopening proofs. But that's mistaken. There would be prejudice, so that's not helping plaintiff. How is there prejudice? The prejudice would accrue to the department's institutional interests and ultimately harm to the public. Because if every licensee who did not ultimately prevail were granted a re-hearing to call witnesses who were known to them, then that would seriously impede administrative functioning. And related to that, the department is constrained by limited resources. So if there's a redoing in a matter like this, where there's every opportunity to put on a defense, then that diminishes the department's ability to move forward with other disciplinary proceedings. And ultimately, that diminishes the department's ability to protect the public and carry out its duties under the Act. So are you asking us to weigh the administrative prejudice, meaning that it can't carry out its duties, versus physician access to a rural community? I'm asking the court to review the director's decision for an abuse of discretion based on what was before the director. But I'm also pointing out that if you looked to these guidelines, which the plaintiff says, oh, those were the correct guidelines, the result wouldn't be any different here. And the idea that there's no prejudice, I think, is incorrect, because it should look to what would happen if you just redo proceedings in cases where there is no basis to do that. The statements themselves, were those statements important? Those arguments were made to the director. That was considered in making the director's decision. I think that's a bit mixed. One of the nurse's statements was more about office procedures. One of the nurse's statements does say she's in the room, but it's a little unclear. But I think the main point there is these still were not affidavits or sworn statements. So there is not even any competent evidence. There are just these remarks, and that diminishes their effectiveness at a minimum. It's also contrary to the department's regulations. So even if we looked to these additional standards, it wouldn't change anything. But the way the director did look at it, that analysis was perfectly reasonable. Plaintiff is saying, well, there wasn't a final decision here, so it should have been these other standards. At the time of the rehearing motion, though, it's technically correct that there wasn't a final decision from the director. But at that point, the administrative hearing had already concluded. There had already been a recommendation by the ALJ. There had already been a recommendation by the medical board. So hearing of the evidence was done. Thinking of that situation as more similar to a situation of asking for a new trial after, based on newly discovered evidence, after an adverse decision, that was an entirely reasonable analysis. And it was also the analysis that the plaintiff urged the director to adopt. And with that, I see that my time is ending, and I'll conclude. Did we talk about forfeiture? Your time is up. Let's just get to questions. Thank you. The director or the department argues about analogous law. The analogous law can't be the Edwards line of cases. That's what they've been hearing, and it's what they adhere to in the circuit court. That's what they adhere to in their brief in this court. The first time I ever heard the department make the argument that what I think is, and I think it's obvious, the correct analysis and why we fail under the correct analysis is an oral argument I just heard. It's not raised in the briefing, if I could be so bold as to say. I think that argument has been conceded a forfeit, and I don't think you can do that the first time, oral argument on appeal. But the point is, you do not have the discretion to apply the wrong body of law. And the board should have read the statutes. The statutes only apply where there's been a final order. Look at page 19 of the brief. Look at those statutes. They don't apply. They can't apply. How can they argue that the correct analysis body of law applies to situations where only a judgment, a final judgment of some sort has been entered? The correct body of law needs to be filed is the standard for reopening a person. They argue, they say we're asking for a rehearing. We're saying reopen approves. I think it's a semantic argument at this point. It is true that we specifically ask for a rehearing before the board, but at page A74 of the record, the generic grant any relief that is unwarranted, it's just a semantic argument. They could have, I think the board could have recommended, the director could have said, go back, grant a rehearing, and hear this additional evidence, or go back, reopen approves, and hear this additional evidence. That's why I don't think the forfeiture argument makes any sense. Mr. Dunham? Yes. I am concerned by the fact that the motion for rehearing did not have any affidavits attached as to what the nurses would say. I think that's a fact. It doesn't even have a 109 certification. Well, that's correct, Your Honor. However, this is not the standard for reopening approves is not like a summary judgment. There's not a lot of cases on it, but what cases there are do not require the party. In fact, I don't think in any of the cases that I can recall the facts where the motion to reopen approves was accompanied by an affidavit. And certainly, the lawyer that's representing Dr. Benskin in the department is an officer of the court and is making an offer of something I think in the nature of an offer of proof and saying, if you give me this opportunity, this is what my witness is going to say. And I have supreme confidence that if we are granted relief in this case, that's exactly what these witnesses are going to say as an officer of the court. So there's been an offer of feature. The issue was raised. The department talks about we're asking for a rehearing to hear additional evidence. We're saying it's reopened approves to hear additional evidence. It's essentially the same thing, and we're arguing about semantics. The nurse's testimony, you say it's not a surprise to the other side because it's basically the same thing Dr. Benskin testified about, confirming their office policy. But if it's really a question of credibility, I asked the other side, and they didn't particularly respond to it. What about the fact that the doctor stipulated to the facts for no contact order? Doesn't that kind of weigh in favor of the court denying reopening these proofs? If you look at that document, Your Honor, and he testified about it, what he did was he was advised by his lawyer, look, you don't want to have anything to do with this patient. She doesn't want to have anything to do with you. Just go ahead and agree to it. I will say this. I think it's very unfortunate, and there are federal cases that say that it is reasonable excuse the negligence of your own lawyer. They are federal cases under 16B, but it's just very unfortunate that the decisions that were made here. But this is, like I say, it's not an adversary situation. We might have a different posture here if it was the patient suing my client. Here we've got a neutral fact finder, hopefully trying to find out the truth. Thank you. Other questions? No questions. Thank you. We appreciate your arguments. We'll consider the briefs and consider your arguments made today. We'll take the matter under advisement and issue a decision in due course. Thank you.